UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DARREN FOSTER,

    Plaintiff,

        v.                                                                 Civil Action No. 20-1047 (JEB)

U.S. DRUG ENFORCEMENT
ADMINISTRATION, *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Award-winning documentary filmmaker Darren Foster, whose productions include *American Pain, The Naked Truth: Death by Fentanyl*, and *The OxyContin Express*, has turned his attention to a new project. Hoping to use security-camera footage from over fifteen years ago that depicts the parking lot of a pain clinic in Fort Lauderdale, Florida, in an upcoming film, Foster filed Freedom of Information Act requests with the Federal Bureau of Investigation and the Drug Enforcement Administration in 2020, seeking release of the video. After reviewing the requests, Defendants determined that the video was entirely exempt from disclosure under FOIA Exemptions 6 and 7(C), which protect against unwarranted invasions of personal privacy, and 7(E), which safeguards law-enforcement techniques and procedures. Foster then filed suit in this Court, contending that Defendants' invocation of these exemptions is unwarranted. The parties now cross-move for summary judgment. Having reviewed a representative sample of the video at issue *in camera*, the Court concludes that Plaintiff has the better of the argument; it will thus grant his Motion and deny that of Defendants.

1

I.    **Background**

As Defendants did not oppose Plaintiff's statement of undisputed material facts, the Court will treat those facts as true. See LCvR 7(h)(1); ACLU v. DHS, 2023 WL 2733721, at *1 n.1 (D.D.C. Mar. 31, 2023). Defendants submitted their own statement of material facts, which Plaintiff disputes only in minor respects; the Court considers those facts as supported by the record. In addition, as the DEA has since been dismissed from this action, see ECF No. 43 (Stipulation of Dismissal), the Court limits its discussion to claims concerning the FBI.

On October 23, 2014, "as part of his opioid-related reporting," Foster attended a conference entitled "Solutions Summit: Missouri's Prescription Drug Abuse Epidemic." ECF No. 55-2 (Pl. SUMF), ¶ 4. At the conference, which was "free and open to the public," id., ¶ 5, DEA Diversion Program Manager Scott Collier presented and "played parts of a video taken from a security camera outside a pain clinic" then located at E. 291 Commercial Blvd. in Fort Lauderdale. Id., ¶¶ 7–9. The video was "used in the investigation of Vincent Colangelo, who in 2012 pled guilty to charges related to a conspiracy to illegally distribute pain medications." Id., ¶ 11. The site of the pain clinic is now home to a car dealership. Id., ¶ 12.

On January 22 and March 4, 2020, Foster submitted separate FOIA requests to the FBI, seeking various video and audio records acquired during Defendants' investigation into "pill mills" in Florida. See ECF No. 53-1 (Def. SUMF), ¶¶ 1–2; 7–9; Pl. SUMF, ¶ 13. The FBI notified Foster that it would neither confirm nor deny the existence of responsive records pursuant to FOIA Exemptions 6 and 7(C) and closed his first request. See Def. SUMF, ¶¶ 4–5. Plaintiff appealed the agency's response to DOJ's Office of Information Policy, id., ¶ 6, and subsequently filed suit in this Court in May 2020. Id., ¶¶ 11–13; Pl. SUMF, ¶ 14.

2

"Following further administrative processing, the [FBI] determined that it could conduct searches and make releases of non-exempt records responsive to Plaintiff's FOIA requests." Def. SUMF, ¶ 19.  Between May and July 2021, the agency made three interim releases with redactions.  Id., ¶ 22.  As part of the search process, the bureau identified 6.5 hours of surveillance footage "pertaining to a medical clinic of investigative interest" that allegedly engaged in illegal prescription-drug distribution.  Id., ¶ 23.  Foster subsequently agreed to narrow the scope of his request to the footage captured in the parking lot of the clinic.  Id., ¶ 25.  That footage, which presumably includes the video clip shown at the 2014 conference he attended, depicts people entering, leaving, or passing by the clinic.  Id., ¶ 27; see also ECF No. 55 (Pl. MSJ) at 2 n.1 (linking footage and clinic at issue).  The FBI withheld the video in full after determining that it was exempt pursuant to Exemptions 6, 7(C), and 7(E).  See Def. SUMF, ¶ 26; Pl. SUMF, ¶ 15.  The propriety of that withholding decision is the sole subject of the parties' Cross-Motions for Summary Judgment.  See ECF No. 53 (Def. MSJ); Pl. MSJ.

In order to better understand what the footage shows, the Court ordered a representative portion to be submitted *in camera*.  The video is divided into four screens, with two camera feeds depicting the interior of the clinic and two exterior feeds.  The Court understands that only the exterior shot of the parking lot is at issue here.  See Def. MSJ at 3; Pl. MSJ at 2 n.1.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

3

summary judgment."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). The court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). It may also conduct an *in camera* review of disputed records. Soghoian v. DOJ, 885 F. Supp. 2d 62, 71 (D.D.C. 2012) (citing Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978)). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure'. . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

4

**III.    Analysis**

Defendants invoke three FOIA exemptions to justify their withholding of the video: 6, 7(C), and 7(E).  The Court addresses the first two together and then moves on to the third.

A.    Exemptions 6 and 7(C)

Both Exemptions 6 and 7(C) concern privacy interests.  The former shields "personnel and medical files . . . the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), while the latter protects "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  Id., § 552(b)(7)(C).  Because Exemption 7(C) permits withholding of records compiled for law-enforcement purposes if disclosure "could reasonably be expected" to constitute an "unwarranted" invasion of personal privacy, id., whereas Exemption 6 governs disclosures that "would constitute a clearly unwarranted" invasion, id., § 552(b)(6), "Exemption 7(C) is more protective of privacy than Exemption 6" and thus establishes a lower bar for withholding material.  Dep't of Defense v. FLRA, 510 U.S. 487, 496 n.6 (1994); see also Nat'l Archives and Recs. Admin. v. Favish, 541 U.S. 157,165–66 (2004).  The Court thus need only consider whether Defendants' withholding is justified under Exemption 7(C).

As an initial matter, for Defendants to properly invoke 7(C), the records at issue must be compiled for law-enforcement purposes.  Bartko v. DOJ, 898 F.3d 51, 64 (D.C. Cir. 2018).  The term "compiled" means the records were "created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption," Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mex., 740 F.3d 195, 203 (D.C. Cir. 2014) (citing John Doe Agency v. John Doe Corp., 493 U.S. 146, 155 (1989)), while

5

the term "law enforcement" covers, among other things, investigation and prosecution of individuals for violation of law.  Id.  There is little doubt that this requirement is satisfied here, as the footage was obtained and used by the FBI in connection with its criminal investigation into the illegal distribution of prescription drugs.

The Court must then balance the privacy interests at stake against the public interest in disclosure.  ACLU v. DOJ, 655 F.3d 1, 6 (D.C. Cir. 2011).  The threshold question in that inquiry is "whether there is any privacy interest at stake here."  Id.  "[I]f there is no privacy interest, Exemption 7(C) simply does not apply."  Id. at 16.  Here, there is none.  The parking-lot footage provided by the agency for *in camera* review is of low resolution and depicts vehicles entering and exiting the parking lot.  It also shows people leaving and returning to their cars, and walking into and out of the clinic.  No faces are discernible, however, no license plates are visible, and no individual can reasonably be identified from the footage.  This is likely why the DEA felt comfortable playing parts of the footage at the 2014 conference, a fact undisputed by the bureau.  No cognizable privacy interest is therefore implicated.  Ray, 502 U.S. at 176 (holding that disclosure of highly personal information generally does not constitute unwarranted invasion of privacy where that information cannot be linked to specific individuals).  The Court thus concludes that the video may not be withheld under Exemption 7(C).

      B.      Exemption 7(E)

Next up is Exemption 7(E), which covers records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  As with Exemption 7(C), the threshold requirement that the records be compiled for law-enforcement purposes is satisfied.  In

addition, the FBI is not claiming there are guidelines at issue here.  The agency thus needs to show that releasing the parking-lot footage would disclose law-enforcement techniques or procedures used for investigations or prosecutions and that disclosure of such might increase the risk "that a law will be violated or that past violators will escape legal consequences."  Mayer Brown LLP v. IRS, 562 F.3d 1190, 1193 (D.C. Cir. 2009); see also Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011) (applying "risk of circumvention" standard to law-enforcement techniques and procedures).

      The FBI does not carry that burden here.  As Foster rightly observes, Defendants do not claim that the video was captured by their own surveillance devices.  Instead, the declaration submitted by Shannon R. Hammer, Assistant Section Chief of the Record/Information Dissemination Section, refers to the security technologies as merely "[being] available to th[e] medical clinic."  Pl. MSJ at 5–6 (quoting ECF No. 53-2 (First Hammer Decl.), ¶ 31).  Disclosing a video captured by a now-defunct private entity's security camera would hardly reveal an investigative technique or procedure used by the FBI, including how it conducts surveillance, selects targets, or allocates investigative resources.  Hammer explains that the bureau invoked the exemption to protect "the identity of methods it uses to collect and analyze . . . Closed-Circuit Television (CCTV) security footage."  First Hammer Decl., ¶ 31.  Revealing the footage, she claims, would diminish "[t]he relative utility of [the CCTV] systems."  Id.  Yet all we learn is that the agency obtained and reviewed evidence collected by a private party.  Indeed, Hammer herself has disclosed that well-known fact.  See Billington v. DOJ, 69 F. Supp. 2d 128, 140 (D.D.C. 1999) (holding that 7(E) "may not be used to shield well-known or commonplace techniques or procedures").  Were that sufficient to trigger Exemption 7(E), virtually any third-party record later reviewed by law enforcement — from store receipts to cell-phone records —

7

could be withheld as revealing an investigative "method," a result that 7(E) does not support. Cf. Shapiro v. DOJ, 893 F.3d 796, 800–01 (D.C. Cir. 2018) (affirming application of Exemption 7(E) to records generated from commercially available database because disclosure would reveal details of agency's methods of searching and managing database); Blackwell, 646 F.3d at 42 (similar).

Nor have Defendants shown that disclosure of the video "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). While this requirement is "a relatively low bar," Blackwell, 646 F.3d at 42, the agency's showing here does not meet it. The bureau posits that "criminals would analyze details from the footage," including "vantage points, scope of view, [and] clarity of images[] to determine from what point of view, at what distance, and at what level of clarity of the images they would most likely be able to avoid detection." ECF No. 58-1 (Second Hammer Decl.), ¶ 5. Yet all this does is refer to the specifics of this particular camera in the parking lot, which was not installed or maintained by law enforcement. More importantly, the video was recorded more than fifteen years ago and depicts a location now occupied by an unrelated business. Defendants do not even suggest that the same camera remains in use or that the site continues to be monitored in a similar manner. As a result, any information about vantage points or potential blind spots would be outdated and disconnected from the agency's current investigative practices. See Ball v. U.S. Marshals Serv., 2021 WL 4860590, at *7 (D.D.C. Oct. 19, 2021) (applying Exemption 7(E) to law-enforcement technique "currently in use"). The undisputed fact that portions of the video were shown at a conference that was open to the public in 2014 — albeit by a sister agency — further undermines the FBI's contention that disclosure now would provide meaningful information to would-be wrongdoers.

The Court therefore concludes that Exemption 7(E) does not justify withholding the requested video either.

**IV.     Conclusion**

For the foregoing reasons, the Court will issue an Order this day granting Plaintiff's Motion for Summary Judgment and denying Defendants'.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  February 10, 2026